## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| PCM, INC., FRANK F. KHULUSI, THOMAS A. MALOOF, RONALD B. RECK, and PAUL C. HEESCHEN, | ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on June 24, 2019 (the "Proposed Transaction"), pursuant to which PCM, Inc. ("PCM" or the "Company") will be acquired by Insight Enterprises, Inc. ("Parent") and Trojan Acquisition Corp. ("Merger Sub," and collectively with Parent, "Insight").

2.      On June 23, 2019, PCM's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Insight.  Pursuant to the terms of the Merger Agreement, PCM's stockholders will receive $35.00 in cash for each share of PCM common stock they own.

3.      On July 26, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the

Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for August 26, 2019.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of PCM common stock.

9.      Defendant PCM is a Delaware corporation and maintains its principal executive offices at 1940 E. Mariposa Avenue, El Segundo, California 90245.  PCM's common stock is traded on the NASDAQ Global Market under the ticker symbol "PCMI."

10.     Defendant Frank F. Khulusi is Chief Executive Officer and Chairman of the Board of the Company.

11.     Defendant Thomas A. Maloof is a director of the Company.

12.     Defendant Ronald B. Reck is a director of the Company.

13.     Defendant Paul C. Heeschen is a director of the Company.

14.     The defendants identified in paragraphs 10 through 13 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of PCM (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

16.     This action is properly maintainable as a class action.

17.     The Class is so numerous that joinder of all members is impracticable.  As of June 21, 2019, there were approximately 12,327,791 shares of PCM common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

18.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

19.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

20.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

21.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

22.     PCM, through its wholly-owned subsidiaries, is a leading multi-vendor provider of technology solutions, including hardware, software, and services to small, medium, and enterprise businesses, state, local and federal governments, and educational institutions across the United States, Canada, and the UK.

23.     On June 23, 2019, PCM's Board caused the Company to enter into the Merger Agreement with Insight.

24.     Pursuant to the terms of the Merger Agreement, PCM's stockholders will receive $35.00 in cash for each share of PCM common stock they own.

25.     According to the press release announcing the Proposed Transaction:

Insight Enterprises (Nasdaq: NSIT), the global provider of Insight Intelligent Technology Solutions™ for organizations of all sizes, ("Insight"), and PCM, Inc. (Nasdaq: PCMI), a provider of IT products and services ("PCM"), have entered into an agreement under which Insight will acquire PCM for $35 per share, representing a 36% premium to its 1-month average closing share price as of Friday, June 21, 2019. The transaction implies an enterprise value of approximately $581 million (including cash and debt acquired). . . .

4

Terms and Financing

The transaction is subject to certain customary closing conditions, including regulatory approvals and approval of PCM's shareholders, and is expected to close in the second half of 2019.

Insight will fund the acquisition through cash on hand and borrowings under a new Asset Based Loan revolving credit facility.

Advisors

J.P. Morgan Securities LLC is acting as financial advisor and Sullivan & Cromwell LLP is acting as legal advisor to Insight.

B. Riley FBR, Inc. is acting as financial advisor and Sheppard, Mullin, Richter & Hampton LLP is acting as legal advisor to PCM.

26.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals.   Section 6.2(a) of the Merger Agreement provides:

> Except as expressly permitted by this Section 6.2, the Company shall not, and shall cause its Subsidiaries and each of their respective directors and officers not to, and shall use its reasonable best efforts to cause its and its Subsidiaries' employees, investment bankers, attorneys, accountants and other advisors or representatives (such directors, officers, employees, investment bankers, attorneys, accountants and other advisors or representatives, collectively, "Representatives") not to, directly or indirectly:
>
> (i) initiate, solicit, propose, knowingly encourage or knowingly facilitate any inquiry, proposal, indication of interest or offer that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal;
>
> (ii) engage in, continue or otherwise participate in any discussions or negotiations relating to any Acquisition Proposal or any inquiry, proposal, indication of interest or offer that could reasonably be expected to lead to an Acquisition Proposal (other than to state that the terms of this provision prohibit such discussions);
>
> (iii) provide any information to any Person in connection with any Acquisition Proposal;
>
> (iv) subject to Section 6.2(i), waive, terminate, modify or fail to enforce any "standstill" or confidentiality or similar obligation of any Person (other than any party hereto) with respect to the Company or any of its Subsidiaries; or

(v) otherwise knowingly facilitate any effort or attempt to make an Acquisition Proposal.

27.     Additionally, the Company must promptly advise Insight of any proposals or

inquiries received from other parties.  Section 6.2(c) of the Merger Agreement states:

> The Company shall promptly (and, in any event, within 24 hours) give written notice to Parent if the Company or any of its Subsidiaries receives (i) any inquiry, proposal, indication of interest or offer with respect to an Acquisition Proposal, (ii) any request by any Person or group for information in connection with or with respect to any Acquisition Proposal, or (iii) any request by any Person or group for discussions or negotiations, or to initiate or continue discussions or negotiations, with respect to an Acquisition Proposal, setting forth in such notice the name of such Person or group and the material terms and conditions of any proposals or offers (including, if applicable, complete copies of any written request, inquiry, proposal, indication of interest or offer) and thereafter shall keep Parent informed, on a reasonably current basis (and, in any event, within 24 hours), of the status and material terms of any such proposals or offers (including any material amendments thereto) and any material changes to the status of any such discussions or negotiations, including any change in its intentions as previously notified.

28.     Moreover, the Merger Agreement contains a "fiduciary out" provision permitting

the Board to change its recommendation of the Proposed Transaction under extremely limited

circumstances, and grants Insight a "matching right" with respect to any "Superior Proposal" made

to the Company.  Section 6.2(f) of the Merger Agreement provides:

> Notwithstanding anything to the contrary set forth in this Agreement, prior to the time, but not after, the Requisite Company Vote is obtained, the Company Board may effect a Change of Recommendation if the Company Board has determined in good faith, after consultation with its outside financial advisors and outside legal counsel, that (x) in the case that the Change of Recommendation is not made in response to an Acquisition Proposal, that an Intervening Event has occurred and the failure to take such action would be in violation of the directors' fiduciary duties under applicable Law, and (y) in the case that such Change of Recommendation is made in response to an Acquisition Proposal, such Acquisition Proposal constitutes a Superior Proposal and the failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law; provided, however, that the Company Board shall not take any action set forth above unless and until (1) the Company has given Parent written notice of its intention to take such action three Business Days in advance, which notice shall comply with the provisions of Section 6.2(c) (if applicable), setting forth in writing that management of the Company

intends to recommend to the Company Board that it take such action; (2) after giving such notice and prior to taking such action, the Company has negotiated in good faith with Parent (to the extent Parent wishes to negotiate) to enable Parent to propose in writing a binding offer to make such revisions to the terms of this Agreement such that it would cause such Superior Proposal to no longer constitute a Superior Proposal (or, in the case of a Change of Recommendation not involving an Acquisition Proposal, that the failure to effect a Change of Recommendation would not be reasonably likely to be inconsistent with the directors' fiduciary duties under applicable Law); and (3) at the end of the three Business Day period and prior to taking any such action, the Company Board has considered in good faith any such binding offer to make revisions to the terms of this Agreement proposed by Parent and any other information offered by Parent in response to the notice, and has determined in good faith, after consultation with outside legal counsel and its outside financial advisors, that in the case of a Superior Proposal, the Superior Proposal continues to constitute a Superior Proposal (or, in the case of a Change of Recommendation not involving an Acquisition Proposal, that the failure to effect a Change of Recommendation would be inconsistent with the directors' fiduciary duties under applicable Law) if such changes proposed in such binding offer by Parent were to be given effect.  In the event of any modification to the financial terms or any other material terms of any Acquisition Proposal, the proviso in the immediately preceding sentence shall apply again with references to "three Business Days" being replaced with "two Business Days".

29.     The Merger Agreement also provides for a "termination fee" of $16.6 million payable by the Company to Insight if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

30.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

31.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

32.     The Proxy Statement omits material information regarding the Company's financial projections.

33.     The Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBIT, and (c) unlevered free cash flow; and (ii) a reconciliation

of all non-GAAP to GAAP metrics.

34.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

35.     The Proxy Statement also omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, B. Riley FBR, Inc. ("B. Riley").

36.     With respect to B. Riley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values for PCM; (iii) B. Riley's basis for applying exit multiples ranging from 6.5x-7.5x; and (iv) the individual inputs and assumptions underlying the discount rate range of 13.0% to 14.0%.

37.     With respect to B. Riley's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by B. Riley in the analysis; and (ii) the premiums paid in the transactions.

38.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the PCM Board of Directors; Reasons for the Merger; (iii) Certain Unaudited Prospective Financial Information of PCM; and (iv) Opinion of Financial Advisor.

40.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PCM**

41.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  PCM is liable as the issuer of these statements.

43.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

44.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

46.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

47.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

48.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

49.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of PCM within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of PCM and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved

in the making of the Proxy Statement.

53.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 30, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
**OF COUNSEL:**  300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
**RM LAW, P.C.**  Telephone: (302) 295-5310
Richard A. Maniskas  Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300  Email: sdr@rl-legal.com
Berwyn, PA 19312  Email: bdl@rl-legal.com
Telephone: (484) 324-6800  Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com  *Attorneys for Plaintiff*

12